# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH E. GARNER, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-289-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|        Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Kenneth E. Garner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 31, 1967, and was forty-four years old at the time of the administrative hearing (Tr. 34, 106). He completed the tenth grade, and has past relevant work as a driver (Tr. 27, 119). The claimant alleges that he has been unable to work since January 1, 2008, due to degenerative disc disease, and inoperable bulging discs at L4 and L5 (Tr. 118).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 15, 2010. His application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated October 3, 2011 (Tr. 18-28). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 416.967(a) (Tr. 21). The ALJ concluded that although the claimant could not return to his past relevant work as a driver, he was nevertheless not disabled according to Rule 201.25 of the Medical-Vocational Guidelines, *i. e.*, "the Grids" (Tr. 27).

## Review

The claimant contends that the ALJ erred by (i) failing to properly assess his RFC; (ii) failing to properly analyze his credibility; and (iii) failing to perform a proper step five analysis. The undersigned Magistrate Judge finds that because the ALJ failed to properly evaluate the claimant's pain in determining his RFC at step four, and compounded this error in applying the Grids at step five, the decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine, status post laminectomy; and obesity, as well as the nonsevere impairments of hypertension and gout (Tr. 20-21). The claimant was previously determined disabled from July 1998 through July 2006 (Tr. 32). Medical records reflect that the claimant received treatment for his chronic herniated lumbar disc, that it was not amenable to surgery, and that it was characterized by paraspinous muscle spasms (Tr. 246-262). Dr. Robert Wendell Ross treated the claimant as far back as 1998. His notes reflect that the claimant was being treated for chronic low back pain and was on a pain management contract (Tr. 208). On November 24, 2007, Dr. Ross noted the claimant was walking with a severe bilateral antalgic gait and had marked paraspinous muscle spasm (Tr. 206). Treatment notes from 2009 through March 2010 indicate that the claimant reported continued back pain and decreased range of motion and had positive straight leg raising tests (Tr. 217-224). He noted on one visit that the claimant was attempting to get disability, and stated that the claimant could not do manual/industrial work (Tr. 223). He prepared a physical RFC assessment on March 9,

2011, indicating that the claimant could sit a total of forty-five minutes and stand/walk a total of thirty minutes in an eight-hour workday; could rarely lift/carry up to ten pounds; could rarely push/pull, work in extended position, and reach, but never work above shoulder level or work overhead; could occasionally grasp, finger, and perform fine manipulation; never perform postural limitations; and had no environmental restrictions other than moderate driving (Tr. 241-242). He attributed the claimant's limitations to inoperable degenerative disc disease and stated that the claimant was unable to do most daily activities without severe pain. As to objective findings, he referred to the claimant's paraspinous muscle spasms, decreased range of motion, and insomnia, then stated that any amount of strenuous activity caused the claimant to need several days of complete rest (Tr. 244). He listed the claimant's impairments as "failed HNP, DDD, degenerative arthritis radiculopathy, and right thigh second to degenerative disc disease of the low back" (Tr. 244).

Ron M. Gann, D.O., examined the claimant on March 15, 2008. He noted the claimant had some decreased range of motion in his back, the lower back with forward flexion at approximately 70% of normal, left side bending approximately 60%, and right side bending and flexion at 80% of normal limits of range of motion (Tr. 181). He further recorded moderate tenderness to palpation at the L4 and L5 in the paraspinal areas bilaterally (Tr. 181). He assessed the claimant with chronic lower back pain and a possible herniated disc per history, with pain that, in his opinion, provided no significant hindrance of ability to move; and elevated blood pressure (Tr. 182).

On May 16, 2009, Dr. David Wiegman conducted a second consultative physical examination. He noted that the claimant had a normal symmetric steady gait and could walk on his toes but had difficulty walking on his heels due to pain (Tr. 211). He reported the claimant's degenerative disc disease diagnosis with a bulging disc, and noted that the claimant did have decreased range of motion of his back as well as tenderness to palpation over his back (Tr. 212-216).

A third consultative examiner, Dr. Jimmie Taylor, saw the claimant on July 5, 2010 (Tr. 225). His impression was degenerative disc disease low back, radiculopathy right thigh secondary to the degenerative disc disease, and chronic pain, and he also noted a decreased range of motion (Tr. 227-221). A state reviewing physician found that same month that the claimant could perform a full range of medium work (Tr. 233).

At the most recent administrative hearing, the claimant testified that he has pain in his lower back, right leg, both feet, and his hands, and that he also experiences gout flare-ups every three months (Tr. 36). He stated that he takes pain medications daily, but they do not take away his pain, and his pain interferes with his ability to sleep (Tr. 37-39). He stated that during the day he lays down or reclines approximately five or six hours a day, that his daughter does his housekeeping, and that he has no hobbies (Tr. 39).

The ALJ summarized the claimant's hearing testimony and discussed the medical evidence. He found that the medical evidence did not support the claimant's allegations of severity and frequency and that his longitudinal history was "not necessarily consistent with his allegations of disability" (Tr. 24). The ALJ also stated that:

> The objective medical evidence in this case establishes that, contrary to the claimant's allegations of disabling pain, he has exhibited relatively mild symptoms. Severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, the use of assistive devices, prolonged bed rest, or adverse neurological signs. In the present case, no such signs exist. Claimant's treatment has been fairly conservative, basically consisting of prescription medication for his back pain.

(Tr. 25). The ALJ then found that the claimant was not disabled.

The claimant contends that the ALJ improperly disregarded Dr. Ross's findings and failed to properly account for his pain. In this regard, the ALJ noted the claimant's assertions of pain but essentially rejected them, despite finding that the claimant suffered from multiple severe pain-inducing impairments. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.*, degenerative disc disease of the lumbar spine, the ALJ was required to

consider the claimant's pain and the extent to which it was disabling. And because the ALJ found that the claimant's degenerative disc disease was a severe impairment at step two, *i. e.*, having more than a minimal effect on her basic work activities, it is "impossible to conclude at step four that h[is] pain was insignificant." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003); *see also Duncan*, 1998 WL 544353, at *2 (10th Cir. 1998) ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). *See also Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).

The ALJ compounded this error by conclusively applying "the grids" to determine that the claimant was disabled despite a significant nonexertional impairment, *i. e.*, pain. "The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). An ALJ may rely conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has no significant nonexertional impairment; (ii) the claimant can do the full range of work at some RFC level on a daily basis; and (iii) the claimant can perform most of the jobs in that level. "Each of these findings must be supported by substantial evidence." *Thompson*, 987 F.2d at 1488. Thus, use of "the grids" is inappropriate if a claimant has a

nonexertional impairment, unless the evidence supports a finding that such impairment is insignificant. *Id.* at 1492; 20 C.F.R., pt. 404, subpt. P, app.2, § 200.00(e).

The ALJ thus failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, the claimant could perform with his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but the ALJ did not even bother to consult with the vocational expert that was present at the administrative hearing. The decision of the Commissioner should be reversed and the case remanded for further analysis.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2014.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**